UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION


PALA INVESTMENTS HOLDINGS      )  CASE NO:  SACV 10-1789-AG-CWx
LIMITED,                       )
                               )            CIVIL
            Plaintiff,         )
                               )    Los Angeles, California
      vs.                      )
                               )   Tuesday, October 18, 2011
ALDEROX CANADA, INC., ET AL., )
                               )    (10:00 a.m. to 10:30 a.m.)
            Defendants.     )


MOTIONS HEARING

BEFORE THE HONORABLE CARLA M. WOEHRLE,
UNITED STATES MAGISTRATE JUDGE

SEE CALENDARED MOTIONS (NEXT PAGE)


Appearances:              See Next Page

Court Reporter:           Recorded; CourtSmart

Courtroom Deputy:         Donna Y. Thomas

Transcriber:              Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>CALENDARED MOTIONS</u>:


DKT. NO. 42: MOTION TO COMPEL DEFENDANT MICHAEL C. DAVIES TO
              PROVIDE FURTHER RESPONSES TO PLAINTIFF PALA
              INVESTMENTS HOLDINGS LIMITED'S FIRST SET OF
              INTERROGATORIES


DKT. NO. 43: MOTION TO COMPEL DEFENDANT MICHAEL C. DAVIES TO
              FURTHER RESPOND AND PRODUCE DOCUMENTS IN RESPONSE
              TO PLAINTIFF PALA INVESTMENT HOLDINGS LIMITED'S
              FIRST SET OF REQUESTS FOR PRODUCTION


DKT. NO. 44: MOTION TO COMPEL DEFENDANT GORDON W. DAVIES TO
              FURTHER RESPOND AND PRODUCE DOCUMENTS IN RESPONSE
              TO PLAINTIFF PALA INVESTMENTS HOLDINGS LIMITED'S
              FIRST SET OF REQUESTS FOR PRODUCTION


DKT. NO. 48: MOTION TO COMPEL ALDEROX CANADA, INC.'S RESPONSES
              TO PALA INVESTMENTS HOLDINGS LIMITED'S FIRST SET
              OF REQUESTS FOR PRODUCTION


DKT. NO. 49: MOTION TO COMPEL ALDEROX CANADA, INC.'S RESPONSES
              TO PALA INVESTMENTS HOLDINGS LIMITED'S FIRST SET
              OF REQUESTS FOR PRODUCTION



<u>APPEARANCES FOR</u>:


Plaintiff:                    MITRA M. ESKANDARI-AZARI, ESQ.
                              Alston & Bird, LLP
                              333 South Hope Street
                              Suite 1600
                              Los Angeles, CA 90071


Defendants:                   TODD B. BECKER, ESQ.
                              (No address provided)

1     **Los Angeles, California; Tuesday, October 18, 2011; 10:00 a.m.**

2                       **(Call to Order)**

3           **THE CLERK:**  All rise and come to order.  This Court

4     is now in session, the Honorable Carla M. Woehrle, United

5     States Magistrate Judge, presiding.

6           **THE COURT:**  Good morning.

7           **MR. BECKER:**  Good morning, your Honor.

8           **MS. ESKANDARI-AZARI:**  Good morning.

9           **THE CLERK:**  You may be seated.  Calling Case Number

10    SACV 10-1789 AG (CWx), *Pala Investments Holdings LTD versus*

11    *Alderox Canada, Inc., et al.*  Counsel, please enter your

12    appearances for the record.

13          **MS. ESKANDARI-AZARI:**  Good morning, your Honor.  My

14    name is Mitra Eskandari-Azari for Pala.

15          **THE COURT:**  Good morning.

16          **MR. BECKER:**  Good morning, your Honor, Todd Becker

17    for the Defendants.

18          **THE COURT:**  Good morning.  Okay.  We'll have some

19    discussion today because I'm going to need to be brought up to

20    date on where we stand in terms of what I'm going to do about

21    ordering further responses.  Overall, there are some things

22    where it's clear I am going to order further responses and

23    we'll talk about the various motions.

24          Overall as to the sanction requests, I want to start

25    out by saying that case dispositive or evidentiary sanctions

1   are not going to be warranted at this point and on the

2   arguments about spoliation, it's definitely premature in my

3   mind for a ruling on whether any kind of spoliation instruction

4   would be warranted or appropriate but that, to me, would be an

5   open question and could be renewed as the case progresses,

6   certainly if it gets close to trial.  There would need to be a

7   further record and specifically there would need to be further

8   evaluation about what prejudice might be suffered but I

9   certainly don't rule out the possibility that some kind of

10  spoliation instruction would be warranted at some point and I

11  would not be making that ruling today.

12          I do think that some monetary sanction is warranted

13  and I'm going to reserve for now the question about what that

14  amount would be.  Let me just give you, on a couple of these

15  motions, what my thoughts are and then specifically about the

16  document motion -- motions.  That's where I want to talk with

17  you both further to get some more clarity.  The Alderox Canada

18  motions, both the interrogatory and the document requests --

19          **MS. ESKANDARI-AZARI:**  Uh-huh.

20          **THE COURT:**  -- those responses I see have now been

21  served.  I understand the issue about whether it was

22  appropriate to file an additional paper but it actually -- I've

23  considered what was filed because that's helpful to me to be

24  brought up to date.  The responses do have objections but they

25  clearly state that there was nothing withheld on the basis of

1    the objections.  It's unclear to me that any further responses

2    would be appropriately ordered at this time but that's without

3    prejudice.  I do think that some monetary sanctions should be

4    imposed with respect to those motions and my tentative view is

5    that it would be a total of 2,500 on the two motions.

6              On the motion for the interrogatories to Michael

7    Davies, there are four interrogatories at issue, I believe.

8              **MS. ESKANDARI-AZARI:**  Uh-huh.

9              **THE COURT:**  I think that supplemental responses are

10   required to each one and this is relatively simple.  I can tell

11   you what I think those are.  As to Number 9 which asks about

12   the IP rights, there's a clarifying statement in the opposition

13   and -- that basically says that there is no claim of any IP

14   rights after February of 2010.  If that's the answer, then that

15   should be provided in a supplemental response.  Number 14,

16   there is a -- again in the opposition a reference to a prior

17   answer.  I think that answer is a sufficient response but in a

18   supplemental response, it needs --

19             **MR. BECKER:**  I'm sorry, your Honor.  What number was

20   that?

21             **THE COURT:**  Number 14.

22             **MR. BECKER:**  Thank you.

23             **THE COURT:**  That's the one about facts surrounding

24   the development of the domain name.  Again, in a supplemental

25   response, you need to refer to the prior answer and also the

1    dates and the specific -- that the dates that are -- of the

2    events that I referred to in the supplemental answer need to be

3    provided.

4            Number 18 is the interrogatory about if you contend

5    that they're not confusingly similar.  That's a contention

6    interrogatory and you need to respond to it.  If you contend --

7    if that's not going to be an issue, it needs to be made clear

8    that it's not going to be an issue.  If you're not going to

9    make a contention that they're not confusingly similar, then

10   that needs to be stated.  So that needs a supplemental

11   response.

12           Then as to 19, which is the employment relationship

13   with ACI, the dates that Mr. Davies has acted as corporate

14   secretary need to be provided.  Those are relatively limited

15   supplemental responses and otherwise I don't have a problem

16   with those answers as they were with the supplemental responses

17   that were originally provided but I think an additional

18   supplement for those points is required.

19           **MR. BECKER:**  Your Honor, just to -- for the Court's

20   edification --

21           **THE COURT:**  Yes.

22           **MR. BECKER:**   -- we've actually already provided

23   additional supplemental responses to all of the questions since

24   the motion was filed.  We've subsequently -- at the time we did

25   the Alderox Canada responses, we also went on to do amended

1  responses to all of the other questions that were outstanding

2  on the motion for -- to compel as well.

3          THE COURT:  Okay.  Well, if the points that I've just

4  addressed are already covered in the supplemental supplemental

5  responses, then it's unnecessary but those are the points that

6  I do think need to be responded to.

7          MS. ESKANDARI-AZARI:  And I don't know that they -- I

8  can't say right now that they are.  I don't recall them being

9  covered, all of them, but we both need to go back and look at

10  that, I think.

11          THE COURT:  Okay.

12          MR. BECKER:  Yeah, we can -- I think we can probably

13  meet and confer on that and see if those are dealt with.

14          MS. ESKANDARI-AZARI:  Yeah.

15          THE COURT:  Okay, all right.  Well, then that brings

16  me to the document production motions and -- so you've already

17  answered one of my questions which is that obviously there has

18  been something further.  I'll tell you that my view was that

19  there were going to need -- we were going to need amended

20  responses at least to clarify that nothing had been withheld on

21  the basis of objections and then as to the various requests

22  where there was an indication that additional searches would be

23  conducted that that needed to be addressed in amended responses

24  and some information regarding what the search efforts had

25  been.

```
 1              I was -- the question I was going to ask you was
 2   where we stand and if it's possible to get some assistance from
 3   the two of you about what substantive disputes there are that
 4   would remain about the scope of document production --
 5              MR. BECKER:  Uh-huh.
 6              THE COURT:  -- if any and so actually I'll -- if
 7   there have been supplemental responses since the motions were
 8   filed, that would be helpful.  So why don't you tell me if
 9   there are real disputes that you still have open?
10              MS. ESKANDARI-AZARI:  I think that there are --
11              THE COURT:  Uh-huh.
12              MS. ESKANDARI-AZARI:  -- with regard to specifically
13   the scope -- as you mentioned, the scope of their request.  I
14   can just think off the top of my head and I apologize for not
15   having, you know, all the documents present that were recently
16   -- there weren't very many that were recently produced but --
17              THE COURT:  Uh-huh.
18              MS. ESKANDARI-AZARI:  -- we still have an outstanding
19   issue as to obtaining all of the invoices and all of the sales
20   records and the advertisement for, I believe, Alderox Canada,
21   the Alderox Canada entity and many of the financial documents
22   and I understand that they Defendants haven't yet filed tax
23   returns -- or if I'm correct, they still haven't filed tax
24   returns yet for 2009 and '10.  Is that correct?
25              MR. BECKER:  That's correct.
```

EXCEPTIONAL REPORTING SERVICES, INC

```
 1          MS. ESKANDARI-AZARI:  So we understand those may not

 2   exist yet but other financial documents that essentially

 3   establish the schedules that they've sent us so far as the

 4   owing documents.

 5          THE COURT:  The underlying --

 6          MS. ESKANDARI-AZARI:  Yes, those underlying financial

 7   documents.

 8          THE COURT:  -- underlying financial documents.

 9          MS. ESKANDARI-AZARI:  Yes.

10          MR. BECKER:  Well --

11          THE COURT:  Okay.  Go ahead.

12          MR. BECKER:  -- well, one issue I have, your Honor,

13   is after we provided all the documents to them since -- you

14   know, which was -- it's been several weeks now that we provided

15   those documents -- additional documents to them and I think

16   they were fairly voluminous.  The amount of documents that we

17   provided to them is probably about one and a half Banker's

18   boxes of documents but we've gotten no response.  In fact, I

19   talked to counsel about -- I don't know, approximately a week

20   and a half ago or a week ago and at that time, she just said

21   they were standing by their objections and I didn't get any

22   clarification whatsoever as to what they are still -- was

23   needed.

24          So to be honest with you, I'm kind of unclear and

25   actually the indications by counsel today is the clearest
```

1    indication I've gotten yet as to what they're still looking for

2    from us other than the tax returns which, you know, haven't

3    been filed yet but, you know, as far as backup for invoices and

4    so forth, we've given them -- we've really given them

5    everything we have.  We've given them, you know, all our

6    documentation off of QuickBooks.  We've given them invoices

7    and, you know, I know that there's the issue that once we

8    change the name which was -- the reason we changed the name was

9    because we have this lawsuit and not that we're admitting fault

10   but we don't really need that name to operate and so we changed

11   the name and then the way that QuickBooks works, it

12   unfortunately deletes out the old information and just has the

13   new name.

14           We're not denying that we were using the other name

15   and they have gotten subpoenas from our various customers which

16   all have the other name.  So we're not trying to hide that

17   fact.  We just don't -- it's just the way the QuickBooks works.

18   Unfortunately once you make that change, it's changed on the

19   system.

20           THE COURT:  Right, I understand that point.  So --

21   but the point is that you've produced the invoices that back up

22   the --

23           MR. BECKER:  Right --

24           THE COURT:  -- computer?

25           MR. BECKER:  -- right.  And the other thing, your

1   Honor, is we have three people --

2          **THE COURT:**  Uh-huh.

3          **MR. BECKER:**  -- working for our company and they're

4   all working trying to actually pay for this lawsuit mostly at

5   this point but, you know, versus a multi-billion-dollar company

6   and, you know, the resources at their disposal are much more

7   limited and it's very -- this litigation is pretty much wiping

8   them out which -- you know, which is what we were indicated

9   from the beginning that -- by counsel that they're client was

10  really attempting to do.  They said, you know, basically they

11  were going to bury us in litigation.  They told their client --

12  their attorneys to tell us that and their attorneys did tell us

13  that and that's what it feels like they've been doing.  I mean,

14  we just keep trying to comply and trying to comply and trying

15  to comply and then they just -- no matter what we do, it's not

16  adequate.  It's a frustrating process.  We've done three rounds

17  of supplementals, you know, on these.  We've done three rounds

18  of discovery responses already to these responses and, you know

19  -- and we are acting in good faith and our clients are acting

20  in good faith --

21         **THE COURT:**  Uh-huh.

22         **MR. BECKER:**  -- and this is extremely expensive

23  litigation for them and, you know, in the end of the day, we

24  don't think we've done anything wrong whatsoever but the bottom

25  line is we still have to defend ourselves in the litigation.

1         **THE COURT:**  And these documents have to be

2 produced --

3         **MR. BECKER:**  Yes.

4         **THE COURT:**  -- but I will say that my overall sense

5 is that there are not large volumes of documents that are being

6 withheld and that's -- I don't see that as a substantial

7 problem.

8         **MS. ESKANDARI-AZARI:**  The problem -- I apologize,

9 your Honor --

10         **THE COURT:**  Yes.

11         **MS. ESKANDARI-AZARI:**  -- but the problem we see is

12 that with specific documents -- on occasion opposing counsel

13 has asserted the -- their relevance objection and only produced

14 excerpts of documents such as -- I think we used an example in

15 our motion papers of an email where they only included one

16 portion of a -- what was likely a multiple-page email chain and

17 our problem is not so much that they're not necessarily

18 producing documents.  It's partly the completeness of

19 documents, the amount of work we've had to do to simply get

20 adequate responses to these documents and the fact that I

21 understand your Honor is putting this spoliation issue to the

22 side but the fact that we are before this Court asking for a

23 preservation order specifically to preserve these documents in

24 their native format and your Honor denied our motion and at

25 that exact same time in March 2011 when your order came out was

1   when they went through and changed all of it and changed their

2   name and took down the Alderox Canada website and essentially

3   spoiled all of this evidence that we are now having to fight

4   and serve third-part subpoenas, which are incredibly costly to

5   our client to undertake, in order to simply establish our case.

6           **THE COURT:**  Okay.  Well --

7           **MR. BECKER:**  And --

8           **THE COURT:**  -- as I said, I'm not -- I am not going

9   to reach that issue because what the remedy for that is is

10  going to -- it may be monetary.  It may be evidentiary or it

11  may an instructional remedy if it turns out but it's going to

12  depend very much on how that affects your case.

13          **MS. ESKANDARI-AZARI:**  Would your Honor be willing to

14  censure the Defendants for their spoliation to date so that

15  they will make better attempts to preserve their documents

16  going forward?

17          **THE COURT:**  Well, you have a preservation order --

18          **MS. ESKANDARI-AZARI:**  Yes.

19          **THE COURT:**  -- and any violation of that order will

20  have consequences but what I'm not prepared to do is make a

21  finding today that that has been spoliation.

22          **MR. BECKER:**  And, your Honor, there's -- I mean,

23  there's documentation that will be brought forward to the Court

24  showing that all times -- that at all times counsel's client

25  was aware of us using the name Alderox Canada and there's

1  actually an attorney letter from their client saying that they

2  acquiesced to it.

3        THE COURT:  That -- that's -- I understand that keeps

4  coming up in the responses but that's -- that may be your

5  defense on the merits.  They're going to have arguments to

6  contrary.  The point is that you do have an obligation to make

7  sure that the documents are preserved in whatever format you

8  have them.

9        MR. BECKER:  Okay.  And --

10        THE COURT:  What I'm not prepared to do is make a

11  finding today that taking down the website was itself an act of

12  spoliation because I -- that is not apparent to me on the

13  record.

14        MR. BECKER:  And the other thing is, your Honor, that

15  was a -- while that website was up, I'm kind of surprised they

16  didn't go and make copies of it for all these -- for the two

17  years that it was up because it was a public document and when

18  we just -- all we did was take our website down.  We didn't

19  understand when we took it down that he would have -- the

20  person who hosts the website wouldn't have the ability to give

21  us all the documentation on it but we were simply trying to end

22  any argument that we were -- you know, we were cybersquatting.

23  So, you know, it's -- you know, the irony is what we've been

24  attempting to do -- my clients have been attempting to do is

25  not to be in a position where they're violating any

1    cybersquatting rules of trademark rules although, as we've

2    said, all along they've known and acquiesced to our use of

3    these names and these -- and that website.

4          THE COURT:  Okay.  Well, you're on record with that

5    position.  I understand that and as I said, I'm not making a

6    ruling that that was spoliation and it's all going to depend on

7    what the -- what is available and what the cost of getting it

8    is to the Plaintiffs if they need it.

9          MR. BECKER:  Okay.  And we are still attempting from

10   the web hoster who's in Canada to see whatever he can do to get

11   that documentation back for us.  We've requested it on numerous

12   occasions from him.

13         THE COURT:  Okay.

14         MR. BECKER:  So we are attempting to get it from him

15   and if we do get it, we will of course give it to counsel but

16   we haven't been able to get it from his so far.

17         THE COURT:  Okay, all right.  But what I will go on

18   record is that it -- the issue of preservation is very

19   important to the Court and it will have consequences if it's

20   established that there are documents that are -- that were

21   available, that there was reasonable notice where related to

22   the litigation and needed to be preserved and weren't

23   preserved.  So your clients understand that?

24         MR. BECKER:  Yes, your Honor.  We've --

25         THE COURT:  Okay.

1          **MR. BECKER:**  -- told them that and, you know, these

2    are the things that we weren't aware occurred until after the

3    fact and then --

4          **THE COURT:**  Okay.

5          **MR. BECKER:**  So we have told them that in no

6    uncertain terms that the understanding -- I think, you know,

7    they are basically out there trying to conduct business and

8    they took these -- the website down and they took down the --

9    they changed the name basically to try to comply with the

10   Plaintiff's requests and not in any attempt to -- for

11   spoliation of evidence.

12         **THE COURT:**  Okay, I understand.  Now, on what remain

13   as the document issues, the point that counsel makes about

14   relevance objections, that's what I was sort of trying to get

15   at is if there are areas -- for one thing, I'll tell you what I

16   am going to do.  I'm going to require that you have another

17   meet-and-confer about the current production and report to me

18   about any outstanding areas where you have disagreement and

19   what further needs to be produced and what the timeframe is for

20   that production but if there are areas where it's not just a

21   question about what's been produced and what should still be

22   looked for and whether it satisfies the production but if there

23   are areas where there is a substantive dispute about relevance,

24   let me try to give you whatever guidance I can today and what

25   one of them would be that -- as an example, that email chain.

```
 1   That full email chain needs to be produced.  In other words, if
 2   there's a responsive email, then the email chain needs to be
 3   produced unless there's something that's privilege.
 4          MR. BECKER:  I don't think -- and I don't want to
 5   speak out of turn but my recollection on that is we gave what
 6   we had on that email, that we didn't have the rest of the email
 7   and that was what -- we gave them what we had and it wasn't
 8   like we were trying to just give them a portion of an email.
 9          MS. ESKANDARI-AZARI:  Well, I think that was -- the
10   problem we had was that it was clearly not clear from the
11   responses that they gave --
12          THE COURT:  Yeah, the response seemed to say that
13   you --
14          MR. BECKER:  It might be an issue of the response
15   other than the production.  I think my understanding is that
16   that was the entire email, that we didn't not give them a
17   portion of the email based on relevance.  We -- relevancy was
18   our objection -- was a general objection for preservation for
19   objection purposes but we did not give them a limited response.
20          THE COURT:  Okay.  Well, that's -- that needs to be
21   clarified.
22          MR. BECKER:  Sure.
23          THE COURT:  And then one other area and you can tell
24   me if this has been addressed in any of the further discussion
25   or production but there were a couple of requests that were
```

1    directed to what products have been developed or marketed by --

2    there were actually two requests and they seemed to be

3    duplicative.  I didn't quite understand what the difference was

4    but --

5              **MR. BECKER:**  Well --

6              **THE COURT:**  -- the response seemed to suggest that

7    there was a substantive dispute about whether -- about the

8    scope of those requests and whether there was a -- whether it

9    was relevant --

10             **MR. BECKER:**  Uh-huh.

11             **THE COURT:**  -- to address products that were being

12   marketed and developed.

13             **MR. BECKER:**  We have given a supplemental response on

14   that.  I believe -- I think you -- I mean, I don't know if you

15   recall but we've given a supplemental response on that that was

16   pretty clear as to what products we've developed --

17             **THE COURT:**  All right.

18             **MR. BECKER:**  -- and also I think it was Alderox

19   Canada and then Alderox, I think, were the two.

20             **MS. ESKANDARI-AZARI:**  I think we asked one

21   specifically about Alderox, Incorporated and one specifically

22   Alderox Canada --

23             **THE COURT:**  All right.

24             **MR. BECKER:**  Right.

25             **THE COURT:**  So that's --

1           **MS. ESKANDARI-AZARI:**  -- and the timeframe may have

2    been overlapping but I believe each one was directed to a

3    different entity.

4           **THE COURT:**  Okay.

5           **MR. BECKER:**  Yeah, I think that's true and just for

6    the Court's -- I don't recall what has been spelled out to you

7    but Alderox is the company that they bought certain --

8           **THE COURT:**  Yes, and then --

9           **MR. BECKER:**  -- they bought certain intellectual

10   property rights for Alderox.  We developed -- subsequently

11   developed Alderox Canada.

12          **THE COURT:**  Correct.

13          **MR. BECKER:**  Actually we had already had it in

14   existence but then Alderox Canada later developed products, its

15   own products.

16          **THE COURT:**  Yes.  My point is --

17          **MR. BECKER:**  Yes.

18          **THE COURT:**  -- that's not -- that's -- their -- the

19   responses are relevant.  So if that's not a dispute, then fine.

20   If it is --

21          **MS. ESKANDARI-AZARI:**  I don't think -- and again I

22   apologize.  I don't have them memorized but I don't think the

23   supplemental responses adequately addressed what your Honor is

24   pointing out, the scope -- the relevancy.  I think relevancy --

25   the way that the relevancy objection was included in those

1    responses did not materially change in the supplemental

2    responses.

3            THE COURT:  All right.

4            MR. BECKER:  Your --

5            THE COURT:  If it's clear that there's no -- that

6    there's nothing being withheld on the basis of a relevancy

7    objection, then --

8            MR. BECKER:  That's my point.

9            THE COURT:  -- that's fine.

10           MS. ESKANDARI-AZARI:  Okay.

11           THE COURT:  That just needs to be made clear.

12           MR. BECKER:  Yeah, that's my point is that nothing

13   has been withheld based on relevancy.  There's no -- I know for

14   a fact that no document at this point has not been given to

15   counsel based on relevancy --

16           THE COURT:  Okay.

17           MR. BECKER:  -- period.

18           THE COURT:  Well, then really what I need you to do,

19   the two of you, is put your heads together and let me know if

20   there are any further disputes based on the most recent

21   productions that require a Court ruling or a Court order from

22   the Plaintiff's perspective.  If the latest responses make

23   clear in the responses that nothing has been withheld on the

24   basis of objections as to relevancy or otherwise and if there

25   -- I didn't have the sense that there were any privilege issues

1  but if there are any documents withheld on the basis of

2  privilege, you need a privilege log, then those responses need

3  -- that needs to be made clear in a verified response.  Other

4  than that, I don't -- I'm not prepared to make any further

5  ruling on document production without your giving me the

6  updated state of the document production.

7          **MS. ESKANDARI-AZARI:**  I understand.

8          **THE COURT:**  Okay?  So if you could get me a -- just a

9  short joint statement within a week, I'll rule on anything

10  that's necessary beyond that.  Otherwise, my ruling will be

11  addressed to the interrogatory -- oh, no, you have to do the

12  same thing on the interrogatory responses because apparently

13  there were supplemental interrogatory responses on Michael

14  Davies.

15          **MS. ESKANDARI-AZARI:**  Okay.

16          **THE COURT:**  Correct?

17          **MR. BECKER:**  And also Gordon Davies --

18          **THE COURT:**  Okay.

19          **MR. BECKER:**  -- or I guess they were just --

20          **MS. ESKANDARI-AZARI:**  We didn't mention Gordon --

21          **MR. BECKER:**  Yeah, just Michael.  I'm sorry.  You're

22  right.

23          **THE COURT:**  Yeah, all right.  Then I'm just going to

24  overall grant the motions in part then subject to any further

25  order after this joint statement and I am -- I'm going to award

1    monetary sanctions in the amount of $2,500 and that's without

2    prejudice to further monetary sanctions being sought if there's

3    further problems with the discovery.

4         MR. BECKER:  The 2,500, is that for everything or

5    what's that for?

6         THE COURT:  That's for everything.

7         MR. BECKER:  Okay.

8         THE COURT:  It's specifically on the two Alderox

9    Canada motions.

10        MR. BECKER:  If it's specifically on the Alderox

11   Canada motion, can I speak to that just briefly, your Honor?

12        THE COURT:  Yes.

13        MR. BECKER:  It's my firm's issue, not my client's

14   issue, as to the two Alderox Canada motions.  I would just

15   request that the Court award sanctions on -- for each one of

16   $999 just I think based on the State Bar won't -- we'd prefer

17   not to have to report it to the State Bar would be my main

18   reasoning on that.  I believe if it's under a thousand dollars,

19   I don't have to report it to the Bar.

20        MS. ESKANDARI-AZARI:  Your Honor, I would object to

21   that request.  I don't see a reason to -- you know, if opposing

22   counsel is saying it's his fault, I don't see a reason to

23   specifically cover that up with the State Bar.  I mean, the --

24   you know, we could understand their missing a calendaring

25   deadline for the responses -- for the initial request but then

1    to completely ignore counsel's meet-and-confer letter and to

2    completely ignore counsel's inroads to try to get this joint

3    stipulation before the -- your Honor I think is the entire

4    basis of our argument for sanctions and I think it's

5    appropriate.

6            **THE COURT:**  Okay.  Well, there's a sanctions request

7    on all of the motions.  So I'm going to make the ruling as

8    $2,500 in total on all of the motions and you can divide that

9    up however you want, Counsel, but it is without prejudice --

10           **MS. ESKANDARI-AZARI:**  Thank you, your Honor.

11           **THE COURT:**  -- to additional sanctions being sought

12   and specifically without prejudice on the -- on any issue about

13   spoliation.

14           **MS. ESKANDARI-AZARI:**  Would -- does your Honor have a

15   deadline for the payment of the sanctions?

16           **THE COURT:**  Oh, 30 days.

17           **MS. ESKANDARI-AZARI:**  Thank you.

18           **THE COURT:**  And then a week for the joint report.

19   All right?

20           **MR. BECKER:**  Thank you, your Honor.

21           **THE COURT:**  Okay, thank you.  Thank you --

22           **MS. ESKANDARI-AZARI:**  Thank you, your Honor.

23           **THE COURT:**  -- and I do appreciate your continuing to

24   work together to try to resolve this as much as possible.

25   Thank you.

1          **MS. ESKANDARI-AZARI:**  Thank you, your Honor.

2          **MR. BECKER:**  Thank you, your Honor.

3          **THE CLERK:**  Court is adjourned.

4      **(This proceeding was adjourned at 10:30 a.m.)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**CERTIFICATION**</u>

I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.


_____            <u>November 28, 2011</u>

              Signed                                      Dated


                    *TONI HUDSON, TRANSCRIBER*